## Court of Oyer and Terminer New York County.

*October*, 1887.

## PEOPLE *ex rel.* GILL v. SMITH.

STRIKES—CONSPIRACY—PENAL CODE, SECTIONS, 168, 170.

Peacable withdrawal from employment, commonly called a strike, however extensive, for the purpose of obtaining an advance in the rate of wages, or maintaining such rate, is not an offense against the provisions of the Penal Code, (§ 168, 179.)

Where there is no relation direct or indirect between the rate of wages and a strike, the combination which brings the latter about for unlawful purposes, is a criminal conspiracy.

The unlawful purpose of a strike may be evidenced by force, threats or intimidation, to prevent another from exercising a lawful trade or calling.

Section 170 of the Penal Code does not authorize a combination of individuals to compel by means condemned in Section 168 of that Code, working men to join the co-operating forces, or to punish those who are supposed to be inimical thereto.

Return to writs of *habeas corpus* and *certiorari* to review the action of Solon B. Smith, in committing the relator, John E. Gill, and two others, to await the action of the Grand Jury.

The facts in the first case, (*Matter of Hartt*), were as follows:

The relator, John E. Gill was arrested, together with others upon a complaint of Odber M. Hartt, charging him with said other persons of having unlawfully conspired to prevent the complainant from exercing his lawful trade and calling, also to commit an act injurious to trade or commerce,

etc. It appeared from the complaint that Hartt was form-
erly in the employment of Gardner & Estes, as foreman in
their shoe-factory ; that as such foreman Hartt, by direction
of his employers, caused the discharge of an employee of
said firm, said employee being under suspicion of swindling
the firm by altering checks and coupons, and thereby secur-
ing payment for labor not performed. Thereafter, the relator
and others composing a committee of the Knights of Labor,
called upon said firm and demanded that the discharged
employee who was a member of their organization should be
restored to his position, and that Hartt and two assistant
foremen should be discharged. Upon the discharge of the
employee all the other workmen in the employment of the
firm had struck work, and the committee told the firm that
the men would not return to work until the said foremen
were discharged.

The reasons given for demanding the discharge of Hartt by
the committee, were first, the discharge of the employee by
Hart, and second, that Hartt was not a member of the union,
or, as they put it, was a " scab." At various times the
committee were asked whether in case of the final discharge
from the firm's employment, they would endeavor to prevent
his obtaining a situation in some other shoe manufactory.
They declared that they would see to it that Hartt should
not thereafter obtain any employment in the jurisdiction of
District Assembly No. 91, which includes in the City of
New York and the surrounding country within a radius of
fifty miles. Gardner & Estes were at last compelled to accede
to the demands of the strikers, and inform Hartt that they
could not hold out any longer, and that he must resign or be
discharged, whereupon Hartt ceased work under protest.
Afterwards Hart obtained employment in Baltimore, but
after being there, one day, District Assembly No. 41 of the
Knights of Labor ordered a strike of all the workmen in the
shop of Hartt's employers, and said that they should not
return to work until Hartt should have been discharged.
Hartt asked the committee of the Baltimore District Assem-

bly what their grievance was, and they stated that Hartt favored non-union help, and was opposed to union labor, and that their action was instigated by District Assembly No. 91 of New York; that they were part and parcel of the same body, and that they would not go to work again until he was discharged.

In the second case, (*Matter of Hanan*), Gill and others. were charged with having unlawfully conspired to prevent. the complainant, John H. Hanan and his co-partners doing business as manufacturers of shoes, from exercising their lawful trade and calling, by threats and intimidation, and also having conspired to commit an act injurious to trade and commerce. The relator and his companions a committee. of the executive board of District Assembly No. 91, demanded from complainant the discharge of one of his workmen on the ground that said workman would not become a member of their organization, the Knights of Labor,. and threatened complainant that if he did. discharge said workman they would order a strike in his shop. Complainant having refused to dismiss said workman, a general strike was ordered, and took place in defendant's shop.

*Louis F. Post*, for John E. Gill, relator.

*Randolph B. Martine*, District Attorney; *John D. Lindsay*, of counsel, for respondent.

BARRETT, J.—The result of my examination of these papers is, that a *prima facie* case has been made out, sufficient to put the relators upon trial, or rather, to justify the submission of the facts to the grand jury. The difficulty with the positions taken by the learned counsel for the relators is, that here there was no question with regard either to advancing or maintaining the rate of wages. The law as expressed in the present statute (Penal Code, section 170), permits orderly and peaceably co-operation to effect these ends, and undoubtedly, as an incident to this authorized co-operation, that is, to render it effective, a resort to all lawful means of enforcement. Upon this head the exhaustive opinions delivered by

chief Justice SHAW in Massachusetts (*Commonwealth* v. *Hunt*, 4 Metcalf, 111; and Chief Justice DALY in this state (*Stevedores* v. *Walsh*, 2 Daly, 1), are clear and conclusive. Peaceable withdrawal from employment, commonly called a strike, however extensive, is plainly such an incident. Violence, of course is not, nor is a threat of violence, whether direct or as implied in a disorderly and turbulent strike. It is true that an absolute scale of wages cannot be effectively maintained so long as persons, outside of the combination, work for less than the fixed rate, yet such persons have a perfect right to work, and are entitled to protection against lawlessness; that is, to protection not against the peaceable strike, but against violence, or threats of violence, direct, or, as above suggested, in the form of a disorderly and turbulent strike.

Where, however, there is no relation, direct or indirect, between wages and strike, the combination which brings the latter about for unlawful purposes, is a criminal conspiracy. The strike then involves a " diminishing of the quantity of productive labor," which, as was said by SAVAGE, C. J., in the *People* v. *Fisher*, 14 Wend., 18, is "an injury to the community and an act injurious to trade." The judgment in that case upon this head, is not affected by the latter statute; nor is it questioned by the cases already referred to. The unlawful purpose may also be evidenced by force, threats or intimidation to prevent another from exercising a lawful trade or calling (Penal Code, sec. 168, sub. 5); this last provision was not in the Revised Statutes when the *People* v. *Fisher* was decided. Consequently the criminal conspiracy doctrine there discussed had reference solely to acts claimed to be injurious to trade and commerce. Here, however, the complaint covers both grounds, namely: Acts preventive of the exercise of a lawful calling, sub. 5, and acts productive of " Injury to trade or commerce," sub. 6. It is contended that both these subdivisions of section 168 are limited by section 170; and this is clearly so: but such limitation only goes to the extent of legalizing the peaceable and orderly strike when resorted to in good faith for the authorized purposes. Sections 168 and 170, as thus construed, are entirely harmonious.

That which is lawful under section 170, cannot, of course, be unlawful under section 168. In other words, what is permitted by section 170 cannot be a conspiracy to commit an act injurious to trade or commerce ; nor can it amount to a conspiracy to prevent another from exercising a lawful trade or calling by force, threats or intimidation. But what is not permitted by section 170 may constitute a conspiracy and be punishable under subdivisions 5 and 6 of section 168. I cannot therefore assent to the doctrine that section 170 authorizes a combination of individuals to compel, by means condemned in section 168, all workingmen to join the co-operative forces, or to punish those who are supposed to be inimical thereto.

This section (170) is a weapon in aid, not of compulsory organization, but of voluntary co-operation. The construction contended for by the relators would make the labor organizations rather than the courts, the sole judges of whether their acts have any relation to or bearing upon the advancement of wages or the maintenance of the rate. It would enable such organizations to use the wage question, however remote or even imaginary, as a mere pretence to cloak designs entirely foreign thereto. Such was not the legislative intent evinced in either the letter or the spirit of the statute. The latter should be liberally interpreted to give due effect to its beneficent purposes, but it should not, by an unreasonable or strained construction, be turned from a measure of protection into an engine of oppression.

The facts presented to the magistrate tend to show a deliberate purpose to impoverish and crush a citizen for no reason connected in the slightest degree with the advancement of wages or the maintenance of the rate. In execution of that purpose, they also tend to show acts injurious to trade and acts preventive (threats) of the exercise of a lawful calling.

Such facts should certainly be submitted to the grand jury. It follows that the relators were properly committed and that the writs should be dismissed and the relators remanded.